IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEVIN SHIBILSKI,

                Plaintiff,

v.

JAMES R. MOSS, SCOTT VON HADEN,
BONITA DENNEE, THOMAS DRAKE,
MICHELE MCCREA, & LADYSMITH
FEDERAL SAVINGS AND LOAN,

                Defendants.

OPINION AND ORDER

20-cv-666-wmc

---

In 2013, plaintiff Kevin Shibilski took over as Chief Executive Officer of 5R Processors, Ltd. ("5R"), a computer and electronics recycling company. Now, Shibilski alleges that he was the victim of a scheme to defraud him and personally saddle him with 5R's debts, and he would bring various state law claims, as well as claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961, *et seq.*, seeking redress in federal court.[1] As discussed below, not only is this largely commercial dispute not well suited for RICO, plaintiff's RICO claims must be dismissed as he has failed to adequately allege even *one* predicate act to support his argument that defendants engaged in a pattern of racketeering. Further, because plaintiff's RICO claims provide the only basis for this court's exercise of original subject-matter jurisdiction, the court will decline

---

[1] Also, by way of full disclosure, pending before me are a number of criminal cases brought against plaintiff Shibilski and some of the defendants. *See United States of America v. Shibilski*, No. 20-cr-122-wmc (W.D. Wis. Sept. 10, 2020); *United States of America v. Dennee*, 20-cr-56-wmc (W.D. Wis. May 22, 2018); *United States of America v. Drake*, 20-cr-55-wmc (W.D. Wis. May 21, 2020); *United States of America v. Moss*, 20-cr-54-wmc (W.D. Wis. May 21, 2020). Since none would appear to create any conflict or appearance of conflict, I can see no basis, much less need, for me to recuse myself from presiding over this civil suit. Indeed, the criminal claims concern their alleged participation in environmental fraud, which as discussed below is not a basis for a RICO suit.

to exercise supplemental jurisdiction over plaintiff's remaining state law claims and will dismiss his complaint in its entirety.

## ALLEGATIONS OF FACT[2]

### A. Overview

5R was a Wisconsin-based computer and electronics recycling company. Between 2010 and 2012, it accumulated large amounts of Cathode Ray Tube ("CRT") glass, which 5R could not properly store or process in compliance with federal disposal requirements. Instead, defendant Thomas Drake, who was at that time Chief Executive Officer of 5R, apparently directed that the surplus of CRT glass be unlawfully buried at a 5R facility in Catawba, Wisconsin. Further, defendants Bonita Dennee and James Moss knew about the buried CRT glass, apparently as long-time 5R employees. 5R further attempted to circumvent federal disposal laws by shipping glass between its facilities in Wisconsin and Tennessee, something conducted at the direction of Drake and Moss, as well as aided by Dennee.

Meanwhile, in 2010, Drake began to seek outside investors to bring capital into the company. In particular, 5R proposed a direct investment by Shibilski and, to solicit his investment, 5R created a business plan binder detailing 5R's financials, profit and loss statements, balance sheets, financial obligations, and short and long term debt. These

---

[2] In resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

materials, however, contained various, material misrepresentations and omissions as to the company's financials and unlawful CRT glass activities.

In reliance on these fraudulent materials, Shibilski entered into a Binding Letter of Intent on March 1, 2013. Per the Letter, Shibilski was to become CEO of 5R for which he would earn a salary and obtain gradual ownership of Drake's and Drake's wife's stock in 5R in exchange for Shibilski's assumption of the Drakes' personal guarantees of company debt. This Letter of Intent similarly contained various misrepresentations, including affirming that the financial information provided to him had been true and accurate. Shibilski again relied on the misrepresentations contained in the Letter, which defendants Drake and Moss made with the intent to induce Shibilski to enter into the Letter. Shibilski first became aware of the stored and transported CRT glass in December of 2014 only after personally visiting 5R's facility in Morristown, Tennessee, and seeing the glass stored there.

Plaintiff alleges that defendants breached their fiduciary duties to Shibilski, causing him direct pecuniary harm and leaving him personally responsible for 5R's corporate debt with no assets to run the company.

**B. Overdrafts at Ladysmith Federal and the February 2015 Guarantee**

Before Shibilski signed the Binding Letter of Intent and took over as CEO of 5R, Moss had overdrawn its corporate accounts at Ladysmith Federal Savings and Loan ("Ladysmith Federal") and various other corporate banking accounts. These overdrafts were not reflected on any documentation provided to Shibilski before his execution of the Letter. Even after that date, Shibilski did not maintain control over 5R's finances,

operations, or checking accounts. Instead, they were controlled by Moss until he left 5R in 2016.

In October of 2014, Shibilski apparently became aware of certain tax liabilities owed by 5R after the company received a notice from the IRS, which had calculated that the company owed $175,347 in payroll taxes. In an effort to resolve these outstanding taxes, 5R negotiated with Ladysmith Federal for a loan to refinance its debt. As a part of this loan, Ladysmith Federal, through defendant Scott Von Haden, apparently an employee or officer of Ladysmith Federal, required Shibilski to sign an unlimited personal guarantee as the CEO of 5R, which he did on February 2, 2015. By that date, the loan amount necessary to refinance 5R's debts totaled approximately $690,000. Also by that date, Moss had overdrawn company accounts in the amount of approximately $149,000, allegedly with the knowledge and assistance of Ladysmith Federal and Von Haden. Like the other debts, these overdrafts were known to Moss, Von Haden, and Ladysmith Federal, but they were kept from Shibilski.

Von Haden and Moss intentionally concealed the existence of the overdrafts to induce Shibilski to enter into the loan agreement and guarantee. Shibilski was eventually informed of the overdrafts approximately five weeks *after* he had personally guaranteed 5R's debt, when the overdraft amounts had by themselves risen to $349,000.

    C. **Pure Extractions, Inc. and PXL, Inc.**

In June of 2014 Shibilski had also created a "sister company" to 5R, which focused on glass recycling operations, called "Pure Extractions, Inc.," with Shibilski as the CEO and Moss as the CFO. Moss retained full control over Pure Extractions company accounts, and

from September 2014 to June 2016, he "overdrafted" that company's accounts as well, including by engaging in other fraudulent transactions.

Moss again allegedly engaged in all of these behaviors with the knowledge and acquiescence of Ladysmith Federal. Moreover, during this time, Moss was allegedly conspiring with Ladysmith Federal, Dennee, and Von Haden to set up another new company, "PXL, Inc." in order to compete with 5R, Pure Extractions, and Wisconsin Logistics Solutions (yet another company owned by Shibilski).

In June of 2016, Moss left 5R and Pure Extractions to work for PXL. At that time, he converted 5R and Pure Extractions' assets to PXL, including equipment, office furniture, documents, and customer databases. Shibilski had no knowledge of the existence of PXL either, at least until Moss left 5R and Pure Extractions in June of 2016.

### D. 2015 Litigation with Ladysmith Federal

On September 25, 2015, Ladysmith Federal brought suit against Shibilski as the personal guarantor of 5R's corporate debt, and consistent with the February 2, 2015, refinancing agreement. The parties eventually entered into a settlement in November of 2018. During the pendency of this litigation, plaintiff alleges that Ladysmith Federal tortiously interfered with various real estate deals that Shibilski attempted, specifically by sharing certain financial disclosures with the Wisconsin Department of Workforce Development and delaying any agreement to a settlement.

### E. 2015 Replevin Judgment

In addition to the settlement discussed above, Ladysmith Federal was also awarded

a judgment of replevin on certain assets owned by 5R.  In conjunction with defendants Moss, Dennee, and Von Haden, Ladysmith Federal had apparently leased the replevined assets back to PXL.  The failure to liquidate the replevined assets increased the amount due and guaranteed by Shibilski personally.  Plaintiff alleges that these actions amounted to a breach of fiduciary duties owed to Shibilski by Ladysmith Federal, Moss, Dennee, and Von Haden.

### F.  The Present Case

Now, plaintiff brings this suit, alleging violations of RICO as well as fraudulent inducement, breach of fiduciary duty, and tortious interference with contract.  Defendants Ladysmith Federal and Von Haden have since moved to dismiss the claims against them (dkt. #38), as has defendant Dennee (dkt. #35).  Defendants Ladysmith Federal and Von Haden also moved to stay the proceedings.  (Dkt. #40.)  Finally, plaintiff has moved for an entry of default (dkt. #63) and default judgment (dkt. #44) against defendant Thomas Drake.  These motions are addressed in the opinion that follows.

## OPINION

Under Rule 12(b)(6), dismissal is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).  While a complaint generally "does not need detailed factual allegations," it "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  In other words, a complaint must be "plausible," it must plead sufficient factual

content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the sufficiency of a complaint under this plausibility standard, the court will accept all well-pleaded facts in the complaint as true, but "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "For complaints involving complex litigation -- for example, antitrust or RICO claims -- a fuller set of factual allegations may be necessary to show that relief is plausible." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008). Moreover, allegations of fraud are subject to the heightened pleading standard set forth in Federal of Civil Procedure 9(b), which provides "a party must state with particularity the circumstances constituting fraud or mistake." Thus, to support an allegation of fraud, a plaintiff must generally provide "the who, what, when, where, and how." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *U.S. ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 605 (7th Cir. 2005)).[3] As explained below, plaintiff's RICO claims fall well short of these pleadings requirement, and his remaining state law claims must be dismissed for lack of subject matter jurisdiction.

## I. RICO Claims

RICO was "[e]nacted in response to long-term criminal activity, including, of

---

[3] As here, "[a] claim that 'sounds in fraud' -- in other words, one that is premised upon a course of fraudulent conduct -- can implicate Rule 9(b)'s heightened pleading requirements." *Borsellino*, 477 F.3d at 507 (quoting *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004)).

7

course, acts of organized crime." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). The Act "provides a civil cause of action for private plaintiffs and authorizes substantial remedies, including the availability of treble damages and attorneys' fees." *Id.* Here, along with a variety of state law claims, plaintiff alleges that all defendants violated RICO § 1962(a) and § 1962(b).[4]

Under § 1962(a), it is "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of" an "enterprise." Under § 1962(b), it is further "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of" an "enterprise."

Unfortunately, the broad language of the RICO statute and the prospect of treble damages has led to "widespread abuse" of civil RICO claims. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992). The Supreme Court has emphasized that RICO was enacted in response to "long-term criminal conduct," not isolated or sporadic unlawful activity. *See H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240-41 (1989); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985)). The Seventh Circuit and other courts of appeals have joined in discouraging converting garden-variety common law claims

---

[4] While plaintiff initially alleged additional claims under § 1962(c) and § 1962(d), he withdrew those claims. (*See* Pl.'s Opp'n (dkt. #52) 3 n.1.)

into a RICO violation. *See, e.g.*, *Midwest Grinding Co.*, 976 F.2d at 1025 (criticizing plaintiffs for "persist[ing] in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions"); *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000); *Banks v. Wolk*, 918 F.2d 418, 423 (3d Cir. 1990). Here, plaintiff's complaint simply does not allege the kind of long-term criminal conduct required to state a RICO claim.

Most fundamentally, plaintiff has not alleged even a *single* predicate criminal act, let alone the existence of a pattern of racketeering activity, which is an element of both RICO § 1962(a) and § 1962(b). *See Pizzo v. Bekin Van Lines Co.*, 258 F.3d 629, 633 (7th Cir. 2001). In particular, a pattern of racketeering activity requires at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). These predicate acts of racketeering include certain acts indictable under specific, federal statutes, as well as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

Accordingly, to support a RICO claim, a plaintiff must properly plead a "foundation of predicate acts." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). To do so, a plaintiff must allege sufficient facts to establish probable cause that the defendant committed an "indictable" or "chargeable" offense. 18 U.S.C. § 1961(1); *see also Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990) ("[I]n pleading predicate acts, conclusory

9

allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations.").

Plaintiff's theory as to the claimed predicate acts has oscillated. In his complaint, plaintiff alleged that defendants "committed multiple related acts of wire fraud, financial institution fraud, theft of trade secrets, and hazardous waste violations." (Compl. (dkt. #1) ¶ 146.) In his opposition brief, however, he did not develop his claims of trade secret theft or hazardous waste violations as predicate acts under RICO. Moreover, for the first time in his opposition brief, plaintiff argues money laundering as a predicate act. Despite these deficiencies, the court will address all five of the predicate acts that plaintiff raised in his complaint and/or briefing for the sake of thoroughness.[5]

### A. Hazardous Waste Violations

Plaintiff alleges in detail that defendants Drake, Moss, and Dennee violated federal environmental regulations by improperly accumulating, storing, and shipping CRT glass in violation of 40 C.F.R. § 261.1(c)(8), which regulates the storage and disposal of hazardous waste. However, neither this regulation nor any other environmental laws are included in the list of acts that may qualify as "racketeering activity" under RICO. *See* 18 U.S.C.

---

[5] Plaintiff did not argue that the state law violations alleged in his complaint constituted RICO predicate acts, nor could he. The only state law claims that may underlie a RICO pattern of racketeering activity are acts or threats "involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1). Plaintiff's claims of fraudulent inducement, breach of fiduciary duty, and tortious interference with contract are absent from this list, and so even assuming he adequately pleaded facts to support those causes of action, they cannot support his RICO claims.

§ 1961(1).  Thus, defendants' alleged violations of federal environmental laws provide no support for plaintiff's RICO claims.

### B. Trade Secrets Violations

In his complaint, plaintiff also suggests that his RICO claim is premised on alleged trade secrets violations.  Theft of trade secrets is one of the federal offenses that may support a RICO claim.  *See* 18. U.S.C. § 1961(1) (referencing 18 U.S.C. § 1832).  However, other that his bare allegation that defendants' theft of trade secrets constituted a pattern of racketeering activity, plaintiff advanced no other factual allegations to suggest the theft or even *existence* of trade secrets.  (*See generally* Compl. (dkt. #1).)  Moreover, plaintiff failed to address his trade secrets claim at all in his response to defendants' motion to dismiss, apparently abandoning the claim.  For all these reasons, it cannot serve as a predicate act under RICO.

### C. Financial Institution Fraud

Next, plaintiff cites to the federal bank fraud statute, making it unlawful in to:

> knowingly execute[], or attempt[] to execute, a scheme or artifice –
> (1) to defraud a financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises . . . .

18 U.S.C. § 1344.  Because this claim involves allegations of fraud, it is subject to Rule 9(b)'s particularity requirement.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.");

11

*Jepson, Inc.*, 34 F.3d at 1327 (explaining that Rule 9(b) applies to allegations of fraud supporting RICO predicate acts).

Here, plaintiff Shibilski alleges generally that Moss and Von Haden committed bank fraud indictable under 18 U.S.C. § 1344 when "Von Haden allowed Moss to repeatedly overdraw 5R's company bank account." (Pl.'s Opp'n (dkt. #52) 6.) According to plaintiff, "Moss, with Von Haden's knowledge, repeatedly overdrew the company's bank account with no intention of 5R actually paying that money back, thereby defrauding Ladysmith Federal. . . . While the ultimate target of Moss and Von Haden's scheme was Plaintiff, they nevertheless defrauded Ladysmith Federal in the process." (*Id.*)

There are numerous problems with these allegations. First, "the drafting and deposit of an overdraft check does not constitute a 'false statement' because technically speaking a check does not 'make any representation as to the state of an account holder's bank balance.'" *United States v. LeDonne*, 21 F.3d 1418, 1425 (7th Cir. 1994) (quoting *Williams v. United States*, 458 U.S. 279, 284-85 (1982)). Thus, plaintiff's argument that Moss, with Von Haden's knowledge, overdrew the company's bank account is not by itself sufficient to support a charge of bank fraud under 18 U.S.C. § 1344. Second, plaintiff's argument is contradicted by his own complaint, in which he repeatedly alleges that Ladysmith Federal was *aware of and acquiesced to* Moss's overdrafts. (*See* Compl. (dkt. #1) ¶¶ 69, 70.) In other words, plaintiff alleges that Ladysmith Federal was somehow defrauded, yet was simultaneously aware of and complicit in the alleged fraud, which is not a plausible claim on its face. *See Ashcroft*, 556 U.S. at 678 (complaint must state a plausible claim for relief). Third, plaintiff alleges that he discovered these overdrafts no later than

April 2015, while RICO has a four year statute of limitations period, which "begins to run when the plaintiffs discover, or should, if diligent, have discovered, that they had been injured by the defendants." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Nevertheless, plaintiff brought this claim in July of 2020, over four years after the discovered injury. For all these reasons, plaintiff has failed to allege that defendants committed bank fraud actionable under 18 U.S.C. § 1344.

### D. Money Laundering

As for his claim of money laundering, 18 U.S.C. § 1956 provides in relevant part that an individual shall face criminal penalties if he: (1) "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . with the intent to promote the carrying on of specified unlawful activity" or (2) "transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity." The term "specified unlawful activity" is defined to include any violation of 18 U.S.C. § 1005, which in turn makes it unlawful, among other things, to receive any money or benefits through any "transaction" with the intent to defraud certain financial institutions or the United States or its agencies. Thus, § 1956 "requires proof of two distinct acts: the unlawful activity that generated 'proceeds' and then the monetary transaction conducted with the criminal proceeds." *United States*

*v. Kelerchian*, 937 F.3d 895, 908 (7th Cir. 2019). This claim, too, involves fraud, which is makes it subject to Rule 9(b)'s heightened pleading standard. Fed. R. Civ. P. 9(b).

Plaintiff again bases his RICO claim on predicate overdrafts of the 5R bank account, claiming that "Moss and Von Haden participated in the defrauding of Ladysmith Federal in order to saddle Plaintiff with 5R's debts, destroy 5R's financial wherewithal, and then steal 5R's business through a newly created competitor company." (Pl.'s Opp'n (dkt. #52) 7.) However, the alleged predicated, criminal acts suffer from all the same problems identified above. In particular, the subsections invoked by plaintiff require that the defendant act "with the intent to promote the carrying on of specific unlawful activity." As alleged here, the unlawful activity identified by plaintiff is the defrauding of Ladysmith Federal, but again, plaintiff does not allege that the overdraws were done with the intent to defraud Ladysmith Federal. Rather, plaintiff argues that they were done to "saddle plaintiff with 5R's debts." (Pl.'s Opp'n (dkt. #52) 7.) Further, plaintiff makes no effort to allege "two distinct acts" required to establish liability under § 1956. *Kelerchian*, 937 F.3d at 908.

Plaintiff also alleges that Ladysmith Federal failed to distribute the proceeds of the 2015 replevin judgment, to the IRS, which Ladysmith Federal acquired after suing 5R and Shibilski. (Pl.'s Opp'n (dkt. #52) 7.) According to plaintiff, Ladysmith Federal's failure to do so violated § 1005 and amounted to money laundering. But nothing in the replevin judgment, which plaintiff attached to the complaint, required Ladysmith Federal to make payments to the IRS. Instead, the judgment provided:

> That defendant United States Internal Revenue Service[] may claim some interest or lien in and to the Rusk County Property

14

> and Collateral by virtue of tax lien . . . . That the interest or lien, if any, of said defendant in and to the Rusk County Property and Collateral, is *subsequent, subordinate, and junior* to the lien of Plaintiff.

(Compl., Ex. U (dkt. #1-21) ¶ 70 (emphasis added).)[6]

In addition to these fundamental defects, plaintiff once again fails to plead facts showing the existence of (1) an unlawful activity that generated proceeds and (2) a monetary transaction conducted with those proceeds, both of which are required by 18 U.S.C. § 1956. Thus, plaintiff's flawed theory that Ladysmith Federal did not comply with the terms of the replevin judgment does not begin to support a charge of money laundering.

### E. Wire Fraud

This brings us to the catch-all crime to which many RICO plaintiffs (and not a few federal prosecutors) ultimately resort: using interstate wires in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. 1343. The elements of wire fraud are: (1) participation in a scheme to defraud; (2) intent to defraud; and (3) use of an interstate wire in furtherance of the fraudulent scheme. *United States v. Turner*, 551 F.3d 657, 664 (7th Cir. 2008). However, plaintiff acknowledges that his complaint "does not reference a specific use of interstate communications as part of the Defendants' scheme," instead, he claims to have "confiden[ce] that discovery will reveal such communications and thereby

---

[6] Although plaintiff did not quote this text in his formal complaint, he attached the replevin document to the complaint, and therefore, it may be considered in deciding the merits of a motion to dismiss. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002) (citing *Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir. 1988); Fed. R. Civ. P. 10(c))

15

violations of § 1343." (Pl.'s Opp'n (dkt. #52) 8.) This is simply not good enough, especially so because plaintiff's fraud claims are subject to Rule 9(b)'s particularity requirement. *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992) ("Rule 9(b)'s particularity requirement serves an important purpose. Accusations of fraud can seriously harm a business. This is especially so in RICO cases where those accusations of fraud lead to the probably more damaging accusation that the business engaged in 'racketeering.'"). The court will not subject defendants to discovery just to humor plaintiff's proposed fishing expedition. *See Pizzo*, 258 F.3d at 633 ("We are not impressed by Pizzo's argument that with pretrial discovery she might discover additional frauds. . . . The defendants should not be put to the burden of litigating a RICO suit beyond the pleadings by allegations as thin as in this case.").

For all the reasons discussed above, therefore, the court concludes that plaintiff has failed to adequately allege even one predicate criminal act undertaken by defendants, let alone a pattern of such acts required to support a RICO claim.

## II. Remaining Claims

Since plaintiff's RICO claim is the only alleged basis for this court's exercise of federal subject matter jurisdiction and complete diversity among plaintiff and defendants is lacking, the necessary, next question is whether this court should exercise supplemental jurisdiction over plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissal all claims over which it had original jurisdiction.").

"[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis v. Cook Cty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (alteration in original). There are three generally recognized exceptions to this rule:

> (1) "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court"; (2) "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort"; or (3) "when it is absolutely clear how the pendent claims can be decided."

*Id.* (quoting *Wright*, 29 F.3d at 1251). However, none apply here.

First, the statute of limitations on plaintiff's claims does not favor retaining jurisdiction. Plaintiff claims to have uncovered the alleged unlawful activity in 2015 and 2016, and his fraud claims appear to be subject to a six-year, state statute of limitations, meaning he still has time to assert them in state court if he acts promptly, even without any benefit of tolling. Wis. Stat. §§ 893.93(1)(b). While his breach of fiduciary duty and tortious interference with contract claims appear to be subject to a two-year state statute of limitations, *see Zastrow v. Journal Commc'ns, Inc.*, 2006 WI 72, ¶ 43, 291 Wis. 2d 426, 453, 718 N.W.2d 51 (citing Wis. Stat. § 893.57); *Stapel v. Stapel*, 2010 WI App 120, ¶ 34 n.9, 329 Wis. 2d 269, 789 N.W.2d 753 (citing Wis. Stat. § 893.57), this federal suit was filed well *after* the end of that limitations period, meaning that the court's retention of supplemental jurisdiction would do nothing to save those expired claims.

Second, as to the question of expended judicial resources, this case is still at the pleading stage, and the only real time spend by the parties and the court relates to a federal

claim that has now been dismissed from this case.  Thus, sending the case to state court would result in little, if any, duplication of effort.

Third, although the resolution of some of plaintiff's remaining claims appear to be straightforward (e.g., the statute of limitations issues) others are legally murky or, at minimum, highly fact intensive.[7]  Finding there appears *no* reason for this court to retain supplemental jurisdiction now that the only basis for federal subject-matter jurisdiction is gone, the court will decline to consider the remaining state law claims and dismiss the case.

ORDER

IT IS ORDERED that:

1) Defendants Ladysmith Federal and Von Haden's motion to dismiss (dkt. #38) and defendant Denne's motion to dismiss (dkt. #35) are GRANTED.  Plaintiff's federal RICO claims are DISMISSED WITH PREJUDICE, while his remaining state law claims against all defendants are dismissed without prejudice and with leave to file, as appropriate, in state court.

2) Defendants Ladysmith Federal and Von Haden's motion to stay is DENIED AS MOOT.  (Dkt. #40.)

3) Plaintiff's motion for entry of default (dkt. #63) and motion for default judgment (dkt. #44) are DENIED AS MOOT.

Entered this 1st day of February, 2021.

BY THE COURT:
/s/

_____

WILLIAM M. CONLEY
District Judge

---

[7] For other reasons, resolution of plaintiff's claims of fraudulent inducement against defendant Moss are not "absolutely clear," especially in light of the fact that Moss's *pro se* answer to plaintiff's complaint states simply: "My answers[:]  I have no attorney because I can't afford one."  (Moss Ans. (dkt. #32) 1.)